UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALKER G. HARMAN, JR.,<br><br>                              Plaintiff,<br><br>         -v-<br><br>MOSS & MOSS LLP and JOHN MOSS,<br><br>                              Defendants. | 23 Civ. 10614<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

Plaintiff Walker G. Harman, Jr. ("Harman") sues his former co-tenants, John Moss ("Moss") and Moss & Moss LLP (together, "defendants"), for wrongfully evicting him and his law firm, The Harman Firm LLP ("The Harman Firm"), from a Manhattan office space they formerly shared. Harman alleges that, during a period of remote work through the COVID-19 pandemic, defendants changed the locks on the shared office space and deprived him and his law firm of use of the premises.

Defendants now move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argue that this Court should abstain from exercising jurisdiction in light of a related case pending in New York state court, which involves the same parties, near-identical state-law claims, and the same series of events as this action. They pursue abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), which permits district courts to abstain from an action where a parallel state proceeding is underway.

For the reasons that follow, the Court agrees that *Colorado River* abstention is warranted. The Court thus grants defendants' motion to dismiss under Rule 12(b)(1).

1

I.  **Background**[1]

    A.  **The Parties' Shared Lease and the Events of 2020**

On February 12, 2018, The Harman Firm and Moss & Moss LLP entered into a commercial lease with PAS Associates, LLC ("PAS") for shared office space. Dkt. 6, Ex. 2 ("Lease Agreement"). The Lease Agreement was personally guaranteed by Harman and Moss, who owned and were the named partners of their respective law firms. AC ¶ 13. The agreement provided that rent would be split evenly among the two firms, and that the firms would be jointly and severally liable for any payments owed to PAS. *Id.* ¶ 14. Throughout 2018 and 2019, the firms jointly used the space without incident. *Id.* ¶ 15.

After the onset of the COVID-19 pandemic, Harman alleges, he relocated to Texas to assist family members with health issues. *Id.* ¶ 22. He intended for The Harman Firm to "remain in New York City" and "slowly dissolve over time." *Id.* ¶ 24. Harman alleges that, while employees at The Harman Firm worked remotely in early 2020, defendants "used this opportunity to have the locks changed" in the shared space. *Id.* ¶ 31. During this period, as a result of "unexpected and severe financial setbacks," Harman was unable to pay his share of the rent for April and for "several months thereafter." *Id.* ¶ 34. Harman alleges that defendants, despite "chang[ing] the locks and exclud[ing] [Harman] from the space," "forc[ed] [Harman] to pay for a space that [Harman] could not use." *Id.* ¶ 39. Defendants also allegedly prevented Harman from subleasing the office space, notwithstanding that the landlord, PAS, had assented to Harman's offer to find a subtenant. *Id.* ¶¶ 43, 46.

---

[1] The Court draws the facts in this decision principally from the Amended Complaint, Dkt. 5 ("AC"), and attached or referenced exhibits cognizable on this motion. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

### B.     2021: PAS's Lawsuit and Harman's Third-Party Claims

On January 20, 2021, PAS, the landlord, sued both law firms (Moss & Moss LLP and The Harman Firm) and Harman individually in New York State Supreme Court in Manhattan, seeking to collect unpaid rent. Dkt. 6, Ex. 4 ("PAS Complaint").

On July 19, 2021, after the state court denied its motion to dismiss, The Harman Firm filed a third-party Complaint against Moss. *Id.*, Ex. 7 ("Third-Party Complaint"). It brought five causes of action under New York law, all asserting that Moss had wrongfully evicted it from the shared premises: (1) conspiracy to illegally evict, (2) breach of the covenant of quiet enjoyment, (3) breach of contract, (4) tortious interference with contract, (5) contribution. *Id.* Moss later moved for summary judgment on the claims Harman brought against him, which Harman did not oppose. *Id.*, Ex. 1 (state-court decision). PAS and Harman, in turn, filed motions for summary judgment against the other. *Id.* PAS also moved for a default judgment against Harman. *Id.* On February 2, 2023, oral argument was held. Dkt. 6-1 at 3 ("D. Mem.").

### C.     2024: The State Court Rulings on the Summary Judgment Motions, and the Pending Appeal

On March 12, 2024, the New York State Supreme Court granted PAS's and Moss's motions for summary judgment against Harman and denied Harman's motion against PAS. *See 373-381 PAS Assocs., LLC v. Moss & Moss LLP*, No. 595657, 2024 WL 1076125, at *1–2 (N.Y. Sup. Ct. Mar. 12, 2024). In denying Harman's motion, the Court explained that, although the premise of that motion was "that PAS [had] wrongfully evicted the Harman Firm from the subject premises by changing the locks in June 2020," in fact, the motion was "not supported by evidence in admissible form." *Id.* at *5. The court explained:

> [PAS]'s submissions demonstrate that the Harman Firm was not, in fact, locked out of the subject premises. . . . At that time, [T]he Harman Firm had already begun plans to shutter the firm's New York operations. PAS changed one of the two locks

3

to the premises on April 2, 2020. However, it is undisputed that [T]he Harman Firm continued to have unimpeded access to the premises through the end of April 2020, when it voluntarily closed its New York office, moved out of the premises, stopped paying rent, and effectively ceased all operations out of the premises. Even then, however, the Harman Firm's accountant, who remained in New York (Harman himself had moved to Texas in March 2020), continued to have access to the premises.

*Id.* For the same reasons, the Court granted Moss's motion for summary judgment against Harman, finding that the evidence could not support that Moss had evicted The Harman Firm, either:

For the same reasons as stated above, third-party defendant John Moss's motion . . . for summary judgment dismissing [T]he Harman Firm's third-party complaint against him is also granted. The five causes of action asserted in the third-party complaint are all premised on the same contentions regarding the June 2020 lock change and the purported wrongful lockout of the Harman Firm from the premises. As just discussed, those contentions are baseless and thoroughly refuted by the admissible evidence.

*Id.* at *6. The state court later denied Harman's subsequent motion for reargument. *See PAS Associates, LLC v. Moss & Moss LLP*, No. 595657, 2024 WL 2258613, at *1 (N.Y. Sup. Ct. May 14, 2024).

On April 10, 2024, Harman filed a notice of appeal of the March 13, 2024 decision. Dkt. 9, Ex. A. Briefing is presently underway in the Appellate Division, First Department. Dkt. 11.

### D.  Harman's Lawsuit in This Court

On December 5, 2023, while the state-court motions for summary judgment were pending, Harman filed this federal-court diversity action against Moss & Moss LLP and Moss individually. Harman's Complaint brings three claims, all under New York state law. Dkt. 1 ("Complaint"). These are for (1) contribution, under N.Y. C.P.L.R. § 1403, (2) prima facie tort, and (3) illegal lockout. AC ¶¶ 67–87. On February 25, 2024, defendants moved to dismiss the

4

Complaint under Rules 12(b)(1) and 12(b)(6). Dkt. 3. On March 18, 2024, Harman filed an Amended Complaint. Dkt. 5. On April 7, 2024, defendants filed a renewed motion to dismiss. Dkt. 6. On April 22, 2024, Harman filed a response. Dkt. 8. On April 30, 2024, defendants replied. Dkt. 9.

## II.    Discussion

Defendants move to dismiss solely on abstention grounds. They style the motion as under both Rules 12(b)(1) and 12(b)(6), but the case law is clear that, as this Court has recognized, a motion to dismiss based on the abstention doctrine is treated as pursuant to Rule 12(b)(1). *DeMaria v. N.Y. State Unified Ct. Sys.*, No. 23 Civ. 3627, 2024 WL 1076543, at *3 (S.D.N.Y. Mar. 12, 2024).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citation omitted).

The abstention doctrine defendants invoke is that established in *Colorado River*, 424 U.S. at 813. Federal courts generally have "a virtually unflagging obligation to exercise their jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (citation omitted). *Colorado River* abstention is one of the few "extraordinary and narrow exception[s]" to that obligation. *Colorado River*, 424 U.S. at 813. Under it, a district court may abstain from exercising federal jurisdiction "due to the presence of

a concurrent state proceeding." *Id.* at 818. This doctrine reflects "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.*; *see also Mazlin Trading Corp. v. WJ Holding Ltd.*, No. 19 Civ. 7652, 2021 WL 1164127, at *3 (S.D.N.Y. Mar. 26, 2021) (Swain, C.J.) (abstention warranted where "overlap of the parties and congruence of the subject matter underlying the state court and instant actions" demands it).

The Court now applies the requirements for *Colorado River* abstention to the facts at hand. *See Niagara Mohawk*, 673 F.3d at 100 (district court may dismiss a party's claims where (1) the relevant state and federal actions are "parallel" and (2) an evaluation of a six-factor test weighs in favor of abstention).

### A.   Parallelism

The prerequisite to abstention under *Colorado River* is that the concurrent state and federal proceedings are "parallel." *Id.* Two suits are parallel where "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* (citation omitted). "Perfect symmetry of parties and issues is not required" for the proceedings to be considered parallel. *Abe v. N.Y. Univ.*, No. 14 Civ. 9323, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (citation omitted). Rather, "the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." *DeMaria*, 2024 WL 1076543, at *5 (citation omitted).

The state and federal actions here are clearly parallel. This federal action arises out of the same series of events, involves the same issues, and concerns the same, or effectively the same, parties as the New York state-court action. In the salient part of the state-court action, The Harman Firm—acting after landlord PAS had sued it and Moss—filed a third-party Complaint

against Moss. Its multiple causes of action brought under New York law centrally challenged as wrongful what The Harman Firm contended was Moss's eviction of it from the shared space. Harman's claims in this case challenge exactly the same eviction, again, based on multiple New York state causes of action.

It is of no consequence that the party whom Harman sued in his Third-Party Complaint in state court was Moss individually, whereas in this action, Harman sues both Moss and his law firm; or that the Harman party who sued Moss in state court was The Harman Firm, whereas in this action, it is Harman individually. "In this Circuit, parallelism can be achieved absent strict identity among the parties to the federal and state actions. The parties, rather, need only be 'substantially the same.'" *Jenkinson v. Baptiste-Bruno*, No. 16 Civ. 4519, 2016 WL 7377234, at *3 n.2 (S.D.N.Y. Dec. 20, 2016) (quoting *Niagara Mohawk*, 673 F.3d at 100)); *see also, e.g.*, *Krondes v. Nationstar Mortg., LLC*, 789 Fed. App'x 913, 914 (2d Cir. 2020) (the "district court did not abuse its discretion in finding that the actions were parallel" where "[s]*ubstantially* the same parties are litigants in both actions" (emphasis added)); *Mazlin Trading Corp.*, 2021 WL 1164127, at *3 (finding parallelism where "[t]here is an overlap of the parties involved in the instant action and the relevant state actions," even though "additional parties [were] involved in the state actions"); *Jenkinson*, 2016 WL 7377234, at *3 (actions parallel where "they involve the same accident and *substantially* the same defendants" (emphasis added)); *Machat v. Sklar*, No. 96 Civ. 3796, 1997 WL 599384, at *8 (S.D.N.Y. Sept. 29, 1997) (Sotomayor, J.) (finding parallelism where "the *main* parties are involved in both the state and federal actions and the interests of all of the parties in each action are identical" (emphasis added)). The claims at issue in the two lawsuits do not turn, in any respect, on the organizational versus the individual

7

character of the parties. Moreover, taking into account the claims brought by PAS, the state-court action involved as parties both law firms and both individual principals.[2]

It is also of no consequence that the claims brought by Harman or The Harman Firm challenging the alleged eviction nominally differ between the state and federal lawsuits. In state court, The Harman Firm brought five claims: for (1) conspiracy to illegally evict, (2) breach of the covenant of quiet enjoyment, (3) breach of contract, (4) tortious interference with contract, and (5) contribution. In federal court, Harman brought three claims: (1) contribution, (2) prima facie tort, and (3) illegal lockout. Although the claims nominally differ, each claim, as the New York State Supreme Court recognized in granting summary judgment for Moss on all of the claims brought there by The Harman Firm, was "premised on the same contentions regarding the June 2020 lock change and the purported wrongful lockout of the Harman Firm from the premises." *373-381 Pas Associates, LLC*, 2024 WL 1076125, at *6.[3] And the factual and legal

---

[2] That The Harman Group "no longer exists" as an organizational entity, D. Mem. at 4, no doubt lends insight into why the plaintiff in this action is Harman individually and not his law firm.

[3] The federal- and state-court claims largely map onto each other. The contribution count in both courts is identical. The predicate for the "prima facie tort" claim brought in federal court tracks the "tortious interference with contract" claim brought in state court. *Compare* AC ¶¶ 73–80 ("Defendants Moss and Moss and John Moss intentionally inflicted the harm described throughout the Complaint, specifically that they prevented Plaintiff and The Harman Firm LLP from subleasing Suite 1220. . . . Defendants' conduct would have otherwise been illegal through tortious interference and an illegal lock out and exclusion of a cotenant. Defendants also interfered with Plaintiff[']s right to a sublease."); *with* Third-Party Complaint ¶¶ 31–35 ("Third-Party Defendant conspired to remove The Harman Firm and deprive them of the use of Suite 1220. . . . Third-Party Defendant intentionally interfered with the Lease Agreement which resulted in the destruction of The Harman Firm[']s business at . . . Suite 1220."). And the federal-court "illegal lockout" claim tracks the state-court "conspiracy to illegally evict" and "breach of contract" claims. *Compare* AC ¶¶ 81–87 ("Defendants prevented Plaintiff from using the Office Space and effectively locked him out."), *with* Third-Party Complaint ¶¶ 13–21, 27 ("[PAS] and Third-Party Defendant agreed amongst each other to fraudulently remove The Harman Firm by changing the locks. . . . Third-Party Defendant illegally locked Third-Party Plaintiff out of the use of Suite 1220.").

showings required for Harman to prevail on his claims in federal court are substantially the same as required for his law firm to prevail on the parallel claims in state court. In other words, "there is a substantial likelihood that the state litigation"—now on appeal of the grant of summary judgment against Harman on all claims—"will dispose of all claims presented in the federal case." *Uni-World Cap. L.P. v. Preferred Fragrance, Inc.*, No. 13 Civ. 7204 (PAE), 2014 WL 888372, at *3 (S.D.N.Y. Mar. 6, 2014) (citation omitted); *see also, e.g., U.S. Bank Nat'l Ass'n v. E. Fordham DE LLC*, 804 Fed. App'x 106, 107 (2d Cir. 2020) (district court did not abuse its discretion in finding parallelism where both actions "centered on" the same factual and legal issues, even where federal-court and state-court claims differed nominally); *Abe*, 2016 WL 1275661, at *6 ("Here, [Title VII and ADEA claims] are clearly parallel to Plaintiff's pending NYCHRL claims before the state court, which involve both Plaintiff and Defendant and center around the same series of events."); *Stone v. Patchett*, No. 8 Civ. 5171, 2009 WL 1108596, at *14 (S.D.N.Y. Apr. 23, 2009) (actions parallel where "the main issue in the case is the subject of already pending litigation" (citation omitted)); *Machat*, 1997 WL 599384, at *7 (Sotomayor, J.) ("It is true that Machat seeks a declaratory judgment based on ERISA and Giacobbi seeks an order of payment based on state contract law. Yet they both seek the same outcome. . . . Both actions—if permitted to proceed simultaneously—would leave two courts choosing sides in exactly the same battle.").

In light of the overwhelming overlap of the parties and congruence of the legal and factual subject matter underlying both actions, the Court finds that the two suits satisfy *Colorado River*'s threshold parallelism requirement.

9

**B.     The *Colorado River* Factors**

In evaluating whether to abstain from hearing a case that parallels a pending state-court action under *Colorado River*, federal district courts apply a six-factor balancing test. *See Niagara Mohawk*, 673 F.3d at 100–01. No one factor "is necessarily determinative," but "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case"). The six factors are:

   (1) the assumption of jurisdiction by either court over any *res* or property;

   (2) the inconvenience of the federal forum;

   (3) the avoidance of piecemeal litigation;

   (4) the order in which jurisdiction was obtained;

   (5) whether state or federal law supplies the rule of decision; and

   (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*See Niagara Mohawk*, 673 F.3d at 100–01.

Here, the first two factors do not favor abstention, as defendants recognize. *See* D. Mem. at 10. As to the first, this is not an *in rem* action, and neither the state nor federal court has assumed jurisdiction over any *res* or property. "The absence of a *res* points toward exercise of federal jurisdiction." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (cleaned up). As to the second, as defendants acknowledge, "[b]oth forums are equally convenient." D. Mem. at 10. And where that is so, "that factor favors retention of the case in federal court." *Vill. of Westfield*, 170 F.3d at 122.

10

The remaining factors, however, strongly favor abstention.

As was the case in the *Colorado River* decision itself, the third factor—"the clear federal policy . . . [of] avoidance of piecemeal adjudication"—is often the "most important" factor favoring abstention. 424 U.S. at 819. This policy aims to prevent "inconsistent judgments in separate forums." *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985). Elaborating on this factor, the Second Circuit has cautioned that "inconsistent disposition of claims between two concurrent forums would breed additional litigation on assertions of claim and issue preclusion," which can "burden the parties for years to come." *Id.* at 211; *see also Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 567–68 (1983) ("[S]ince a judgment by either court would ordinarily be res judicata in the other, the existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first, [which would be] prejudicial, to say the least, to the possibility of reasoned decisionmaking by either forum."). And maintaining "virtually identical suits in two forums . . . would waste judicial resources and invite duplicative effort." *Arkwright-Bos. Mfrs.*, 762 F.2d at 211; *see also id.* ("If the federal court refuses to abstain, it will force defendants to defend . . . litigation on two fronts.").

Based on these concerns, courts in this Circuit have frequently found the third *Colorado River* factor strongly to favor abstention where conducting a parallel federal proceeding risked inconsistent and duplicative results. *See, e.g., Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 377 (S.D.N.Y. 2020) ("Defendants' counterclaims—premised on predominantly the same facts and theories as those in the State Action—present a . . . risk of piecemeal litigation with the State Action."); *Best v. Layne*, No. 18 Civ. 2786, 2018 WL 3677883, at *3–4 (S.D.N.Y. Aug. 2, 2018) ("[T]he state and federal actions center on the same key question. . . . Accordingly,

here a potential exists for inconsistent and mutually contradictory determinations. . . . [T]here is no need for litigation to proceed in both state and federal court." (citation omitted)); *Dore v. Wormley*, 690 F. Supp. 2d 176, 192 (S.D.N.Y. 2010) ("The two actions arise out of and depend on exactly the same facts, and both request the same relief. . . . It is fair to characterize the two actions as parallel and piecemeal litigation. . . . The Court will, therefore, consider this factor as weighing heavily in favor of abstention." (cleaned up)); *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 594 (S.D.N.Y. Sep. 15, 2006) (the "existence of nearly identical claims in two different suits results in needless duplication of proceedings and wasting of judicial resources"); *Colony Ins. Co. v. Danica Grp., LLC*, No. 13 Civ. 1714, 2014 WL 4417353, at *7 (E.D.N.Y. Sep. 8, 2014) ("[E]ven where principles of res judicata and collateral estoppel would apply, the risks of duplicative litigation and an unseemly race to judgment weigh in favor of abstaining."); *Ferolito v. Menashi*, 918 F. Supp. 2d 136, 143 (E.D.N.Y. Jan. 15, 2013) (finding third factor to "weigh[] heavily in favor of abstention" where the federal and state courts "would be considering the same issues and will likely hear similar pretrial motions, evidence, and witnesses," and the courts could come to conflicting decisions regarding the same events); *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 189 (E.D.N.Y. 2012) ("Where, as here, the linchpin of the federal action is the same issue at the core of the state action, there is a strong likelihood of needless duplication of the state proceeding." (cleaned up)).

These risks are similarly apparent—and paramount to avoid—here. As explained above in connection with the requirement of parallelism, the federal-court action involves the same parties as the state-court action, involves claims that are virtually identical, and arises out of the same series of events. The core grievance outlined in Harman's federal Complaint tracks that of

12

his law firm's state-court Complaint. *Compare* AC ¶¶ 1–2 ("This case is about an office space leased by 373-381 PAS Associates. . . . The legal claims arise from Moss & Moss, LLP ('the Moss Firm') and John Moss['s] illegal effort to exclude Plaintiff and his firm, The Harman Firm, from Suite 1220."), *with* Third-Party Complaint ¶ 9 ("John Moss made it clear that he simply wanted The Harman Firm removed from the Suite and ensured The Harman Firm would be removed when he changed the locks to Suite 1220."). And permitting litigation in this Court to proceed would invite contradictory outcomes on the same factual and legal theories. Were this Court to find for Harman on his central claim that Moss illegally locked out The Harman Firm, that conclusion would be flatly inconsistent with the state court's finding in entering summary judgment that the claim of a "purported wrongful lockout of the Harman Firm from the premises" was "baseless" and "thoroughly refuted by the admissible evidence." *373-381 PAS Associates, LLC*, 2024 WL 1076125, at *6. And were this Court to find against Harman on this central claim, the Court (and counsel, the parties, and witnesses) would be required to devote considerable time and effort that would duplicate time and effort litigating the same issue in state court. Maintaining this action thus implicates the core concerns—the risk of inconsistent judgments and duplication of judicial efforts—that animate the third factor.

Allowing this case to proceed to judgment would present an additional problem properly addressed in connection with the third factor. Harman brought this action not after the state-court action had been filed, but after oral argument had been held on summary-judgment motions in New York State Supreme Court. The sequence and timing of events invites the inference that Harman filed the federal action anticipating—and hoping to blunt the impact of—a state-court defeat on the claims brought by his law firm, as indeed occurred (subject to the pending appeal). The Court will not countenance Harman's effort here to initiate an "unseemly and destructive

race to see which forum can resolve the same issues first." *San Carlos Apache Tribe*, 463 U.S. at 567. Harman is at liberty to fully pursue appellate challenges to the state-court outcome, but principles animating *Colorado River* abstention disfavor enabling a transparent end-run of it to gain the proverbial "second bite at the apple."[4] The third factor heavily favors abstention.

The fourth *Colorado River* factor examines the order in which jurisdiction was obtained. Abstention is favored where, as here, the relevant state-court actions were "filed first and [are] further along than the federal action." *Buhannic v. Schroeder*, No. 18 Civ. 10170, 2019 WL 4735378, at *6 (S.D.N.Y. Sept. 27, 2019). "This factor does not turn exclusively on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions." *Vill. of Westfield*, 170 F.3d at 122 (citation omitted).

This factor strongly favors abstention. Very substantial headway has been made in state court—a summary judgment decision was imminent at the time this case was brought (and has now been entered and is on appeal). This action was brought in December 2023, some 35 months after the state-court action was filed on January 20, 2021. And the state supreme court rendered its judgment three months later, on March 12, 2024. To say the least, the parallel state-court suit has "progressed far enough to consider the fourth factor as weighing in favor of

---

[4] Had the state-court judgment adverse to The Harman Firm reached a final judgment before this case was filed, principles of another form of abstention—under the *Rooker-Feldman* doctrine—would have barred Harman from bringing federal litigation to unsettle that judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (federal courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). Separately, principles of res judicata would bar Harman from pursuing theories "that *were* or *could have been raised* in that action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added)).

deference to the state court in adjudicating the issues before it and not risking an inconsistent judgment from this Court." *Mazlin*, 2021 WL 1164127, at *5.

The fifth factor considers whether state or federal law supplies the rule of decision. Although the absence of federal issues "does not require the surrender of jurisdiction, it does favor abstention where the bulk of the litigation would necessarily revolve around the state-law . . . rights of . . . parties." *Gen. Reinsurance Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 82 (2d Cir. 1988) (citation omitted). Such is the case here. Harman's claims here are all brought under New York law. Resolution of this case would either effectively duplicate the outcome in state court or cause conflict with that outcome, undermining the principles of both "comity and efficiency." *Mazlin*, 2021 WL 1164127, at *5. The fifth factor thus favors abstention.

The sixth and final factor requires the Court to evaluate whether the state-court proceeding will adequately protect the federal plaintiff's rights. In considering this factor, the Court examines whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28. The Court has no reason to doubt that the pending state action will adequately protect plaintiff's rights. The New York state court system is highly respected. And Harman demonstrated his confidence in that system in electing to bring third-party claims there, and to continue to appeal them. The Court is confident that the state-court litigation has afforded and will continue to afford the parties the opportunity to adequately and completely resolve the issues between them. *See, e.g., Nationwide Gen. Ins. Co. v. Rael Maint. Corp.*, No. 23 Civ. 4433, 2024 WL 1805544, at *10 (S.D.N.Y. Apr. 24, 2024) ("The Court has no reason to doubt that the New York Supreme Court will provide a fair alternative forum that is capable of resolving . . . the issues." (citation omitted)); *Team Kennedy v. Berger*, No. 24 Civ. 3897, 2024 WL 4144057, at

\*6 (S.D.N.Y. Sept. 10, 2024) ("We do not doubt that the New York courts provide a fair alternative forum that is capable of resolving the constitutional issues Kennedy alleges."); *Mazlin*, 2021 WL 1164127, at \*6 ("Petitioners have demonstrated their confidence in the state courts' abilities to adjudicate Petitioners' claims thoroughly and fairly" by filing suit in two different state courts); *Lawrence Moskowitz CLU. Ltd. v. ALP, Inc.*, No. 19 Civ. 3868, 2020 WL 1503558, at \*9 (S.D.N.Y. Mar. 30, 2020), *aff'd sub nom. Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 Fed. App'x 50 (2d Cir. 2020) ("Finding the state procedures adequate, the Court weighs this factor in favor of abstention."); *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 602 (S.D.N.Y. 2013) ("Here, there is no serious question that the state action can adequately protect Plaintiff's procedural and substantive rights and provide a fair forum that will promptly resolve the parties' claims."). The sixth factor thus favors abstention.

Considering all factors, the Court finds *Colorado River* abstention overwhelmingly warranted. This federal case parallels in all meaningful respects the state-court proceeding—a case that has proceeded to the point of appeal. Allowing this litigation to proceed invites inefficiency and inconsistency and undermines comity. This controversy is properly resolved in one forum—New York state court. *See Arkwright-Bos. Mfrs.*, 762 F.2d at 211 ("Maintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort.").

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss under Rule 12(b)(1) and dismisses the action. The Clerk of Court is respectfully directed to terminate all pending motions and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: December 23, 2024
       New York, New York

17